UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Lupient Chevrolet, Inc., | Case No. 19-cv-0705 (WMW/ECW) |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS** |
| General Motors LLC, | |
| Defendant. | |

---

This matter is before the Court on Defendant General Motors LLC's (GM) motion to dismiss Plaintiff Lupient Chevrolet, Inc.'s (Lupient) complaint. (Dkt. 26.) For the reasons addressed below, GM's motion to dismiss is denied.

## BACKGROUND

Lupient is a Minnesota corporation that operates a Chevrolet motor vehicle franchise, where it sells and services GM products. The parties' manufacturer-dealer relationship is set out in the Dealer Sales and Services Agreement (Dealer Agreement). As part of the Dealer Agreement, GM assigned Lupient an "Area of Geographical Sales and Services Advantage" (AGSSA) and an "Area of Primary Responsibility" (APR), for which Lupient was responsible. As a measure of successful franchise performance, GM "compare[s] [Lupient's] retail sales to retail sales opportunities by segment in [Lupient's] Area of Primary Responsibility or Area of Geographical Sales and Service Advantage, whichever is applicable." Satisfactory performance of sales objectives requires Lupient to achieve a Retail Sales Index (RSI) equal to or greater than 100, according to the Dealer

Agreement. If the RSI is below 100, Lupient's performance is "rated as provided in the General Motors Sales Evaluation process." GM also agreed to "consider any other relevant factors in deciding whether to proceed . . . to address any failure by [Lupient] to adequately perform its sales responsibilities." In another section of the Dealer Agreement, the parties also agreed that, if Lupient proposed a change in "Dealer Operator," GM would consider the proposal and would not unreasonably refuse to approve it, subject to certain conditions. For example, Lupient must give GM written notice before making any such change.

Lupient initiated this lawsuit in March 2019. In May 2019, Lupient filed an amended complaint, in which it alleges four claims against GM: (1) GM violated Minn. Stat. § 80E.13(p) by assigning or changing Lupient's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within Lupient's market; (2) GM violated Minn. Stat. § 80E.13(o) by requiring Lupient—by program, incentive provision, or otherwise—to adhere to performance standards that are not uniformly applied to other similarly situated dealers; (3) GM violated Minn. Stat. § 80E.12(g) by preventing or attempting to prevent Lupient from changing Lupient's executive management control; and (4) GM breached the implied covenant of good faith and fair dealing by knowingly and intentionally hindering Lupient's performance of Lupient's contractual obligations.

As support for its claims, Lupient alleged the following factual basis. GM assigned Lupient an AGSSA of 101 census tracts. GM wrote to Lupient, on March 21, 2018, notifying Lupient that its dealership performance was "unsatisfactory" based on GM's RSI calculation. In a letter dated August 24, 2018, Lupient notified GM that Lupient believed

34 of its assigned census tracts should not be assigned to Lupient. GM responded to Lupient, in a letter dated December 14, 2018, that it had conducted a review of Lupient's AGSSA and removed 3 of the requested 34 census tracts from Lupient's AGSSA. Lupient also contends that it notified GM that Lupient was seeking to change its Dealer Operator from Barbara Lupient to Jeffrey Lupient in June 2016. GM had previously approved Jeffrey Lupient as a Successor Dealer Operator. But GM denied Lupient's June 2016 request, in part because Lupient was not meeting its sales performance standards.

**ANALYSIS**

GM moves to dismiss Lupient's complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss on this ground, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient; as is a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). A court need not accept as true a plaintiff's allegations as to legal conclusions, however. *Id*. When ruling on a Rule 12(b)(6) motion, a court must generally ignore matters beyond the pleadings, but a court may consider certain materials, such as those that are part of the public record or that do not contradict the complaint. *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th

Cir. 2014). The Court also may consider "materials that are necessarily embraced by the pleadings." *Id.* (internal quotation marks omitted).

**I.	Ripeness**

GM asserts that Lupient's amended complaint should be dismissed because Lupient has not yet suffered any damages. As such, GM argues, Lupient's claims are not ripe for judicial decision. Under section 80E.17, however, "any person whose business or property is injured by a violation of [the Minnesota Motor Vehicle Sale and Distribution Act] . . . may bring a civil action to enjoin further violations and to recover the actual damages sustained, together with costs and disbursements, including reasonable attorney's fees." Minn. Stat. § 80E.17. Lupient is not required to plead with specificity the precise contours of the damages it has suffered at this stage of the proceedings. *Cf. Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1551 (2016) (explaining that, traditionally, in causes of action pertaining to a private legal right, plaintiff's standing is not contingent on plaintiff's allegations of damages beyond the violation of plaintiff's private legal right). Accordingly, the Court denies GM's motion to dismiss on this basis.

**II.	Retroactivity of the Minnesota Motor Vehicle Sale and Distribution Act**

While the parties agree that the Minnesota Motor Vehicle Sale and Distribution Act (MVSDA), Minn. Stat. §§ 80E.01 *et seq.*, governs the Dealer Agreement, the parties dispute which version of the statute applies. GM contends that the pre-August 1, 2018 amended version of the MVSDA applies because the Dealer Agreement predates the amendment and the MVSDA does not apply retroactively. Lupient counters that the August 1, 2018 version applies because the MVSDA does apply retroactively.

4

"No law shall be construed to be retroactive *unless clearly and manifestly so intended by the legislature*." Minn. Stat. § 645.21 (emphasis added). Section 80E.02 of the MVSDA states that "[t]he provisions of sections 80E.01 to 80E.17 [of the MVSDA] shall apply to all . . . contracts existing between new motor vehicle dealers and manufacturers on May 1, 1981 and to all subsequent contracts between new motor vehicle dealers and manufacturers." Based on the plain language of the statute, MVSDA applies retroactively to all contracts between new motor vehicle dealers and manufacturers that were entered into on or after May 1, 1981.

Accordingly, the post-August 1, 2018 MVSDA governs the Dealer Agreement between the parties.

### III. Violation of Minn. Stat. § 80E.13(p) (Count I)

GM argues that Count I of Lupient's amended complaint should be dismissed because Count I improperly applies the post-August 1, 2018 MVSDA retroactively. But in light of the Court's conclusion that the MVSDA applies retroactively, and because GM advances no other argument for the dismissal of Count I, GM's motion to dismiss this count of the amended complaint is denied.

### IV. Violation of Minn. Stat. § 80E.13(o) (Count II)

Citing Minn. Stat. § 80E.13(o), GM seeks dismissal of Count II of Lupient's amended complaint, arguing that Lupient has not sufficiently pled facts that demonstrate a

non-uniform application of performance standards to similarly situated dealers.[1] Section 80E.13(o) makes it unlawful and an unfair practice for a manufacturer to "require a dealer by program, incentive provision, or otherwise to adhere to performance standards that are not applied uniformly to other similarly situated dealers." Minn. Stat. § 80E.13(o). Lupient claims, in its amended complaint, that its performance under GM's RSI standard has been unreasonably depressed because of its over-inflated AGSSA. Lupient, however, includes no facts to support its allegation that GM has not uniformly applied its RSI standard to Lupient compared to similarly situated dealers.

But this does not end the Court's analysis. Section 80E.13(o) also requires a manufacturer's performance standard to "be fair, reasonable, equitable, and based on accurate information." *Id.* Lupient argues in its amended complaint that inclusion of the 31 disputed census tracts unreasonably inflates Lupient's AGSSA and results in an improper and inaccurate evaluation of Lupient's RSI score. GM has not challenged this aspect of Lupient's amended complaint, which alleges a violation of Section 80E.13(o) based on sufficient factual matter that, when accepted as true, presents a plausible claim for relief.

For these reasons, the Court denies GM's motion to dismiss Count II of Lupient's amended complaint.

---

[1] GM also argues for dismissal of Count II based on the retroactivity of the MVSDA. In light of the Court's ruling that the post-August 1, 2018 MVSDA governs the parties' Dealer Agreement, GM's motion to dismiss Count II on this basis is denied.

## V. Violation of Minn. Stat. § 80E.12(g) (Count III)

GM seeks dismissal of Count III of Lupient's amended complaint, arguing that because Lupient has not requested approval by GM to recognize Jeffrey Lupient as its Dealer Operator, GM has not violated Minn. Stat. § 80E.12(g) by improperly denying Lupient's request. Under Minn. Stat. § 80E.12(g), it is unlawful for any manufacturer to "prevent or attempt to prevent . . . any motor vehicle dealer from changing the executive management control of the new motor vehicle dealer unless the franchisor proves that the change of executive management will result in executive management control by a person who is not of good moral character or who does not meet the franchisor's existing reasonable capital standards." In Article 12.2 of the Dealer Agreement, the parties agreed that, "[i]f [Lupient] propose[s] a change in Dealer Operator, . . . [GM] [will] consider [Lupient's] proposal and not unreasonably refuse to approve it," subject to certain conditions including prior written notification. Lupient alleges that it notified GM of its request to change its Dealer Operator from Barbara Lupient to Jeffrey Lupient in June 2016. GM disputes this fact and submits as an exhibit to its motion to dismiss a December 9, 2016 letter from GM to Lupient, in which GM explains that earlier in 2016, Jeffrey Lupient advised GM that he had purchased the ownership interest in Lupient. GM maintains in the December 9 letter that this "change in ownership was made without GM's prior written approval" in violation of the Dealer Agreement.

When considering GM's motion to dismiss, the Court accepts as true all facts alleged in the complaint. And the Court may not consider documents beyond the complaint

7

that either contradict the complaint or are not necessarily embraced by the pleadings. *See Smithrud*, 746 F.3d at 395. Here, the letter that GM appends to its motion to dismiss contradicts the factual allegations in Lupient's amended complaint. And the December 2016 letter, which is not necessarily embraced by the pleadings, is beyond the Court's consideration. When the Court accepts the facts alleged in Lupient's amended complaint as true, as the Court is required to do, Lupient has sufficiently pled a violation of Minn. Stat. § 80E.12(g).

For these reasons, GM's motion to dismiss Count III of Lupient's amended complaint is denied.

## VI. Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV)

GM argues that Count IV of Lupient's amended complaint must be dismissed because Count IV is duplicative of Count I and because Lupient's allegations of "unfairness" do not amount to "bad faith" or an "ulterior motive" as required to sustain a claim for breach of the implied covenant of good faith and fair dealing. "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not unjustifiably hinder the other party's performance of the contract." *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) (internal quotation marks omitted). In its amended complaint, Lupient relies on GM's alleged violations of the MVSDA, Minn. Stat. § 80E.13(o), (p), as the factual predicate for Lupient's allegation that GM unjustifiably hindered Lupient's performance of the Dealer Agreement. Having determined that Counts I through III of Lupient's amended complaint survive GM's motion to dismiss, and accepting as true the facts as alleged in Counts I

through III, the Court concludes that GM's motion to dismiss Count IV for failure to state a claim must be denied.

GM also argues that, because of an implied covenant of good faith and fair dealing, Count IV of Lupient's amended complaint is not an independent tort that can survive on its own. Under Minnesota law, "when a plaintiff seeks to recover damages for an alleged breach of contract [the plaintiff] is limited to damages flowing only from such breach except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort." *Wild v. Rarig*, 234 N.W.2d 775, 789 (Minn. 1975). Count IV is not a breach-of-contract claim. Rather, Lupient's pleadings include violations of the MVSDA and a separate claim for breach of the implied covenant of good faith and fair dealing, a covenant that Minnesota law recognizes as a component of every contract. As such, Lupient is not seeking duplicative damages. Lupient is permitted to bring a breach-of-the-implied-covenant claim instead of a breach-of-contract claim if Lupient so chooses. The Court also denies GM's motion to dismiss Count IV on this ground.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant General Motors LLC's motion to dismiss, (Dkt. 26), is **DENIED**.

Dated: January 21, 2020
                                                                               s/Wilhelmina M. Wright
                                                                               Wilhelmina M. Wright
                                                                               United States District Judge