UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lupient Chevrolet, Inc., | Case No. 19-cv-0705 (WMW/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| General Motors LLC, | |
| Defendant. | |

Before the Court is Defendant General Motors LLC's (GM) motion for summary judgment. (Dkt. 100.) For the reasons addressed below, the Court grants GM's motion.

## BACKGROUND

Plaintiff Lupient Chevrolet, Inc., (Lupient), is a Minnesota corporation that operates a Chevrolet motor vehicle franchise, where it sells and services GM products. The parties' manufacturer-dealer relationship is set out in a Dealer Sales and Service Agreement (Dealer Agreement). As part of the Dealer Agreement, GM assigned Lupient an "Area of Geographical Sales and Service Advantage" (AGSSA) and an "Area of Primary Responsibility" (APR), for which Lupient is responsible. As a measure of successful franchise performance, GM "compare[s] [Lupient's] retail sales to retail sales opportunities by segment in [Lupient's] Area of Primary Responsibility or Area of Geographical Sales and Service Advantage, whichever is applicable." Satisfactory performance of sales objectives requires Lupient to achieve a Retail Sales Index (RSI) equal to or greater than 100, according to the Dealer Agreement.

In August 2018, Lupient requested that GM remove thirty-four census tracts from its AGSSA. On February 8, 2019, GM notified Lupient that it had decided to remove only three of the thirty-four tracts that Lupient had requested GM remove.

Lupient commenced this action in March 2019, advancing two claims against GM. Lupient amended its complaint in May 2019, advancing four claims against GM. In January 2020, this Court denied GM's motion to dismiss Lupient's complaint for failure to state a claim. Lupient filed a second amended complaint in October 2020 and stipulated dismissal of all but Count I of its amended complaint in May 2021. Count I, the only remaining claim, alleges a violation of Minnesota Statutes Section 80E.13(p). GM now moves for summary judgment on Count I.

## ANALYSIS

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the opposing party must cite with particularity those aspects of the record that support any assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A); *accord Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

2

**I.     Area of Sales Effectiveness**

GM argues that Lupient cannot prevail as a matter of law because Lupient's allegations pertain to Lupient's AGSSA, which GM contends is distinct from the "area of sales effectiveness" covered by Minn. Stat. § 80E.13(p).  The statute defines "area of sales effectiveness" as "a geographic area designated in a franchise agreement or related document where a new motor vehicle dealer is responsible for effectively selling, servicing, and otherwise representing the products of the manufacturer, distributor, or factory branch."  Minn. Stat. § 80E.03 subdiv. 10b.  According to GM, the "area of sales effectiveness" is most appropriately represented by Lupient's APR.

Under the Dealer Agreement, Lupient "is responsible for effectively selling, servicing and otherwise representing [GM] Products in the area designed in a Notice of Area of Primary Responsibility."  At his deposition, GM's corporate representative testified that GM "use[s] APRs to measure a specific dealer's sales performance in [its] assigned area."  In areas with multiple dealers, GM measures dealer performance using an AGSSA, which GM defines as "the geography that the dealer in a multiple dealer area is assigned and is responsible for in [the] sales evaluation."  The parties do not dispute that Lupient has an assigned AGSSA.  The Dealer Agreement has an appended "Notice of Area of Primary Responsibility to General Motors," which includes a list of census tracks assigned to Lupient as well as a map of Lupient's APR and the AGSSA.  The Dealer Agreement provides that, when reviewing Lupient's performance, GM will "compare [Lupient's] retail sales to retail sales opportunities by segment in [Lupient's] [APR] or [AGSSA], whichever is applicable."

The AGSSA cannot constitute an "area of sales effectiveness," GM argues, because the APR is expressly mentioned only in the Dealer Agreement. And GM contends that there is a meaningful distinction between the APR, which GM asserts is the area for which Lupient is responsible, and the AGSSA, which GM maintains is the area on which Lupient's performance is judged. GM provides no evidence in support of this distinction, however. And GM's contention that only the APR is mentioned in the Dealer Agreement is incorrect. At times, the Dealer Agreement refers to the terms alternatively, such as providing that Lupient's performance is measured by either the APR or the AGSSA, "whichever is applicable." And GM appears to use the two terms alternately in its communications with dealers as well. For example, in the February 8, 2019 letter informing Lupient of a change to its AGSSA, GM enclosed "an executed Notice of Area of Primary Responsibility . . . reflecting the revised description of the APR." Describing a change to Lupient's AGSSA as a revision of Lupient's APR suggests that GM considers the AGSSA as part of the APR. Because GM concedes that the APR is an "area of sales effectiveness," the AGSSA, as part of the APR, also constitutes an area of sales effectiveness. Accordingly, an AGSSA constitutes an "area of sales effectiveness" under Section 80E.13(p).

## II.    2019 Change in AGSSA Composition

GM argues that it did not make an assignment or change sufficient to trigger the statute because Lupient consented to the removal of the three tracts GM removed. Minnesota state law provides that it is "unlawful and an unfair practice for a manufacturer" to "assign or change a dealer's area of sales effectiveness arbitrarily or

4

without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market." Minn. Stat. § 80E.13(p). Consequently, by law, when a manufacturer makes a change to the area of sales effectiveness, it must consider certain factors in making its decision.

GM argues that no change occurred that triggered the statute because GM did not change the thirty-one additional tracts Lupient had asked GM to remove, which are at issue in this litigation. But GM provides no support for such a narrow reading of the statute, which would allow a dealer to challenge the manufacturer's decision only as to the particular tracts the manufacturer decided to add or remove, as opposed to the process used to reach the decision. GM's reading is incompatible with the plain language of the statute. *See A&H Vending Co. v. Comm'r of Revenue*, 608 N.W.2d 544, 547 (Minn. 2000) ("[A]ny statutory construction must begin with the language of the statute." (internal quotation marks omitted)). The statute prohibits a manufacturer from making a change or assignment "arbitrarily or without due regard" to certain factors. Minn. Stat. § 80E.13(p). The plain language of the statute, therefore, prohibits an improper *process*—one undertaken arbitrarily or without due regard to certain factors.

Here, on February 8, 2019, GM sent Lupient a letter providing that GM had "made a final decision to revise" Lupient's AGSSA by removing three tracts. Lupient does not challenge GM's removal of those tracts. Instead, Lupient challenges, as arbitrary and without due regard to present market conditions, the process by which GM decided to remove only three tracts, as opposed to thirty-four tracts, from its AGSSA. In doing so,

5

Lupient challenges the process, not the result, as permitted by the statute. For these reasons, the Court denies GM's motion for summary judgment on this basis.

### III. Injury

GM next argues that Lupient cannot bring a claim under Section 80E.13(p) because Lupient has not established that it suffered any injury as a result of GM's alleged failure to consider the statutory factors. Minnesota law provides that

> [n]otwithstanding the terms of any franchise agreement or waiver to the contrary, any person whose business or property is injured by a violation of sections 80E.01 to 80E.17, or any person injured because of the refusal to accede to a proposal for an arrangement which, if consummated, would be in violation of sections 80E.01 to 80E.17, may bring a civil action to enjoin further violations and to recover the actual damages sustained, together with costs and disbursements, including reasonable attorney's fees.

Minn. Stat. § 80E.17. The parties do not dispute that Lupient must demonstrate an injury to prevail. None of Lupient's alleged injuries stems from a "refusal to accede to a proposal for an arrangement which, if consummated, would be in violation of sections 80E.01 to 80E.17." *Id.*[1] Lupient, therefore, must demonstrate that its business or property was injured by GM's alleged violation of Section 80E.13(p).

---

[1] This District has previously observed that "it appears that [Section 80E.17] creates a different injury requirement for different types of claims," one permitting a claim by "any person whose business or property is injured by a violation" and another permitting "a person injured because of the refusal to accede to a proposal for an arrangement which, if consummated, would be in violation of [the Act]." *Metro Motors, LLC v. Nissan Motor Corp. in USA*, 170 F. Supp. 2d 888, 890–91 (D. Minn. 2001) (internal quotation marks omitted). The district court subsequently held that in the context of a claim based on a person injured because of the refusal to accede to a proposal, "the injury to Plaintiff lies in the mere violation of the Act as well as in the fact that Plaintiff is forced to operate with the proverbial 'sword of Damocles' hanging over its head, never

6

GM argues that Lupient has not demonstrated injury because Lupient's expert concluded that Lupient would remain an underperforming dealer even without the disputed census tracts. The Dealer Agreement provides that "[s]atisfactory performance of [Lupient's] sales obligations . . . requires [Lupient] to achieve a Retail Sales Index equal or greater than 100." According to Lupient, dealers risk termination when the RSI is less than 100. Lupient's expert calculated that, without the disputed census tracts, Lupient's RSI for the years 2016 to 2020 would move from a range of 39.1–47.9 percent to a range of 57.3–70.2 percent. Based on the Dealer Agreement, therefore, Lupient would be performing at an unsatisfactory level regardless of the presence of the disputed tracts. Accordingly, GM has provided evidence to support the conclusion that Lupient has not established injury.

Lupient asserts that its depressed RSI score is an injury in and of itself. And, Lupient argues, it has been labeled as "unsatisfactory," placed in a dealer improvement program, and denied various opportunities and operational changes based on its low RSI score. But Lupient does not identify any evidence in the record that an RSI score of 70.2 percent—the highest possible RSI that Lupient's expert calculated without the disputed tracts—would have changed any of these outcomes, since Lupient's performance

---

knowing when, or if, [Defendant] will decide to terminate the Franchise Agreement." *Metro Motors, LLC v. Nissan Motor Corp. in USA*, No. 00-2120 PAM/JGL, 2001 WL 1690060, at *3 (D. Minn. Dec. 27, 2001) (internal quotation marks omitted), *aff'd* 339 F.3d 746 (8th Cir. 2003). But the district court expressly limited the sufficiency of such an injury to cases in which the plaintiff alleges that it has been injured by its refusal to accede to the manufacturer's proposal. *Metro Motors LLC*, 170 F. Supp. 2d at 891. Because Lupient does not allege such an injury here, Lupient's alleged risk of termination does not constitute sufficient injury under Section 80E.17.

undisputedly would still have been categorized as unsatisfactory. When deposed, Lupient's representative testified that Lupient chose not to pursue certain opportunities because manufacturers require dealers to have an RSI score of 80 percent or above. But based on Lupient's expert's calculations, these opportunities would not have been available to Lupient even without the disputed census tracts. Lupient also contends that it "could certainly be the case" that its RSI score would be 100 percent in 2021 or 2022. But such conjecture is speculative and cannot satisfy the statute's injury requirement. *See In re Custody of D.T.R.*, 796 N.W.2d 509, 513 (Minn. 2011) ("The injury to the right impacted by the adjudication must be immediate, and not a possible, remote consequence, or mere possibility arising from some unknown or future contingency." (internal quotation marks omitted)). Accordingly, Lupient has failed to cite with particularity any aspect of the record that would preclude summary judgment in GM's favor. *See* Fed. R. Civ. P. 56(c)(1)(A). Because Lupient cannot prevail on a claim under Section 80E.13(p) without establishing an injury to its property or business, the Court grants GM's motion for summary judgment.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant General Motors LLC's motion for summary judgment, (Dkt. 100), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 30, 2022                              s/Wilhelmina M. Wright
                                                  Wilhelmina M. Wright
                                                  United States District Judge